# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| DOUGLAS N. BARBER, | Civil No. 11-1221 (JRT/TNL) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING MOTION FOR ATTORNEYS' FEES** |
| CAROLYN W. COLVIN, *Acting Commissioner of Social Security*, | |
| Defendant. | |

Neut L. Strandemo, **STRANDEMO SHERIDAN & DULAS, PA**, 1380 Corporate Center Curve, Suite 320, Eagan, MN 55121, for plaintiff.

Ana H. Voss, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for defendant.

Plaintiff Douglas N. Barber brought this action against the Commissioner of Social Security ("the Commissioner"),[1] seeking judicial review of a denial of disability benefits. On August 16, 2012, United States Magistrate Judge Tony L. Leung filed a report and recommendation ("R&R") recommending that this Court reverse the Commissioner's decision and remand the case for further development of the record pursuant to sentence four of 42 U.S.C. § 405(g). Upon receiving no objections from the

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013. Colvin is automatically substituted as the defendant in this matter for Michael J. Astrue, the former Commissioner of Social Security. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

parties, this Court adopted the R&R.  Barber moved for attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.  Because the Commissioner's position in this matter was substantially justified, the Court will deny Barber's motion.

## BACKGROUND

### I.   ADMINISTRATIVE DECISION

Barber filed an application for disability insurance benefits on July 19, 2007. (Soc. Sec. Admin. R. ("Tr.") 15, July 19, 2011, Docket No. 5.)  The state agency denied Barber's application initially and upon reconsideration.  (*Id.*)  After an administrative hearing on December 17, 2009, Administrative Law Judge Roger W. Thomas ("the ALJ") issued a decision finding that Barber was not disabled during the relevant time period. (*Id.*)

The ALJ followed a five-step sequential analysis to determine whether Barber was disabled, considering (1) whether the claimant was engaged in substantial gainful activity; (2) whether the claimant had a severe impairment; (3) whether the claimant's impairment met or equaled a listed impairment; (4) whether the claimant had sufficient residual functional capacity ("RFC") to return to his past work; and (5) whether the claimant could do other work existing in significant numbers in the regional or national economy.  20 C.F.R. § 404.1520(a)-(g).  A "listed impairment" is an impairment set out in Social Security Act ("SSA") regulations.  *Id.* § 404.1520(a)(4)(iii).  A claimant is considered disabled if he suffers from a listed impairment or a disorder that is the medical equivalent of a listed impairment.  *Id.* §§ 404.1520(a)(4)(iii), 404.1526.  In addition, a

claimant is considered disabled if he lacks the RFC to conduct work on a sustained basis due to his impairments.  *Id.* § 404.1545.

In accordance with this five-step analysis, the ALJ first considered whether Barber was engaged in substantial gainful activity.  The ALJ determined that Barber had not engaged in substantial gainful activity during the relevant period, from August 15, 2003, through December 31, 2008.  (Tr. 17.)  Next, the ALJ found that Barber suffered from severe impairments including lumbago with low back pain, history of chronic hip pain, major depressive disorder, and chemical dependency.  (*Id.*)  Specifically, the ALJ found that Barber's major depressive disorder and chemical dependency disorder were severe impairments because they resulted in more than minimal limitations on Barber's ability to perform basic work-related activities.  (*Id.*)

The ALJ then determined that Barber did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  (Tr. 18.)  Among other findings, the ALJ determined that Barber's mental impairments did not meet or medically equal the criteria of Listing 12.04, which applies to affective disorders.  (*Id.*)[2]  In making this finding, the ALJ determined that Barber did not meet the criteria of "paragraph B" of the Listing, which requires that a mental impairment result in at least two of the following:  marked restriction of activities of daily living;  marked difficulties in maintaining social

---

[2] "Affective disorders" are "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation."  20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04.

functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (*Id.*) The ALJ also considered whether the "paragraph C" criteria[3] were satisfied and concluded that "the evidence fails to establish the presence of the 'paragraph C' criteria." (*Id.*) The ALJ further considered if Barber's physical impairments met or equaled any listing and determined that they did not do so. (*Id.*)

The ALJ next assessed Barber's RFC and found that Barber (a) could lift/carry no more than twenty pounds occasionally and ten pounds frequently; (b) could sit/stand/walk six hours per eight-hour workday; (c) was precluded from working around hazards such as unprotected heights or dangerous moving machinery and from climbing ladders, ropes, and scaffolds; (d) was limited to only occasional climbing of stairs and ramps, kneeling and crawling; and (e) was limited to simple and routine tasks in an alcohol and drug-free environment. (*Id.*)

As part of this RFC analysis, the ALJ considered Barber's mental impairments and found that they caused mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, and pace, and no episodes of decompensation. (Tr. 21.) In reaching this conclusion, the ALJ placed significant weight on the opinions of state agency psychologist D. Unversaw and consultative psychiatrist Dr. Alford Karayusuf, whose opinions supported the ALJ's conclusions. (Tr. 21, 23.) The ALJ also considered records showing that Barber participated in certain activities of daily living, maintained

---

[3] The Court will define "paragraph C" below.

some interaction with others, and exhibited at least some indicators of an ability to concentrate.  (Tr. 21-23.)  The ALJ further found that medication helped Barber's symptoms with regard to his mental impairments.  (Tr. 22.)  In light of these and other considerations, the ALJ found that Barber possessed the RFC outlined above.  (Tr. 23.)

The ALJ then determined that Barber could not perform his past relevant work but could perform jobs that existed in significant numbers in the national economy.  (Tr. 23-24.)  Accordingly, the ALJ concluded that, from August 15, 2003, through December 31, 2008, Barber was not disabled.  (Tr. 24-25.)

## II.     ARGUMENTS PRESENTED TO THIS COURT

Barber filed a complaint in this Court for review of the Commissioner's decision. (Compl., May 10, 2011, Docket No. 1.)  Barber and the Commissioner subsequently brought motions for summary judgment.  (Docket Nos. 9, 17.)

In support of his motion for summary judgment, Barber maintained, among other arguments, that the ALJ erred in determining that he did not meet or equal Listing 12.04 because of his severe depression.  As support, Barber pointed to the testimony of Pam Mueller, a psychologist at the Minnesota Veterans Home where he resided, regarding his deeply depressed feelings, low energy, and low self-esteem as well as his long-standing problems with sleep and appetite.  Barber also referenced the testimony of Robert Walker, a licensed social worker at the Minnesota Veterans Home, who had seen Barber two or three times per week during the period at issue.  Walker provided a variety of testimony supporting Barber's application for benefits, such as stating that Barber was

frequently depressed, could be isolated and self-neglecting, was at a relatively high risk of depression returning or a chemical dependency relapse, set very low goals for himself, needed reminders or queues to stay on track, and required assistance to do what he needed to accomplish.   Barber objected to the fact that the ALJ did not specifically comment on or appropriately consider Walker's testimony in his decision.

The Commissioner, in contrast, argued that the record did not support that Barber had marked restrictions in activities of daily living, maintaining social functioning, or maintaining concentration, persistence, or pace.   The Commissioner pointed to evidence in the record regarding Barber's mental impairments, including the findings of Karayusuf and Unversaw regarding the extent of Barber's impairments and other issues.   The Commissioner also argued that, although the ALJ had not specifically referenced Walker's testimony, the "'ALJ's failure to cite to specific evidence does not indicate that it was not considered.'"   *See England v. Astrue*, 490 F.3d 1017, 1022 (8th Cir. 2007) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)).

In addition, the Commissioner and Barber raised arguments regarding issues other than Listing 12.04.   These arguments included whether Barber met or equaled Listing 1.04 because of his physical impairments and whether the ALJ's various RFC findings were supported by substantial evidence.

## III.   REMAND

On August 16, 2012, the Magistrate Judge issued a detailed, sixty-one-page R&R suggesting remand of this matter to the Commissioner.   (Docket No. 21.)   The R&R

- 6 -

recommended affirming the Commissioner's decision on the majority of the issues raised by the parties, determining that: (a) the ALJ's finding that Barber's lower back pain did not meet or equal Listing 1.04 was supported by substantial evidence; (b) the ALJ's physical RFC finding that Barber could perform modified light work was supported by substantial evidence; and (c) the ALJ's mental RFC finding that Barber could perform a limited range of light work on a regular and continuing basis was supported by substantial evidence. (R&R at 47-60.)

The Magistrate Judge remanded on the issue of whether Barber met or equaled Listing 12.04. The Magistrate Judge first agreed with the ALJ that Barber's symptoms did not satisfy "paragraph B" of Listing 12.04. (*Id.* at 49-50.) The Magistrate Judge found no evidence of any episode of extended decompensation. (*Id.* at 49.) Furthermore, the Magistrate Judge found that Barber did not suffer from more than mild or moderate limitations in the areas relevant to "paragraph B" because Barber frequently reported that medication helped with his depression and because, although Barber's depression had fluctuated, his depression had been described as "mild" and his mood as "stable." (*Id.* at 49-50.) In addition, the Magistrate Judge noted that Barber's work reviews and social and recreational activities demonstrated that his difficulties in social functioning were not marked. (*Id.* at 50.)

Next, the Magistrate Judge concurred with the ALJ that Barber did not meet criteria (1) or (2) of "paragraph C" under Listing 12.04. (*Id.* at 50-51.) Regarding criterion (1), the Magistrate Judge stated that there had been no repeated episodes of decompensation. Regarding criterion (2), the Magistrate Judge found that there was no

evidence that a residential disease process had resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause Barber to decompensate.  (*Id.*)

The basis for the recommended remand was criterion (3) of "paragraph C."  This criterion requires:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and . . . [c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. part 404, subpt. P, app. 1 § 12.04(C).  The Magistrate Judge noted that there was a determination in April 2007 that Barber had a "medical need" to be at the Veterans Home and that there was no evidence indicating a change in Barber's condition since that time.  (R&R at 51.)   The Magistrate Judge then explaining the reason for remand as follows:

> There is no dispute that Plaintiff suffers from a major depressive disorder. There is no dispute that Plaintiff is taking medication for his depression. Plaintiff has a history of needing to be in a highly supportive environment and there is no evidence that this need has diminished, which indicates a continuing need for this type of environment.   Therefore, this Court concludes that the ALJ's determination regarding the (C)(3) criteria is not supported by substantial evidence.  Rather than reverse the ALJ's decision, however, this Court concludes that [it] is more appropriate to remand this matter for further development of the record on this point and for reconsideration of whether Plaintiff's major depressive disorder meets Listing 12.04(C)(3).

(*Id.* at 51-52 (internal citations omitted).)   The Magistrate Judge further noted that Walker's opinion was entitled to consideration as part of all of the available evidence.

(*Id.* at 54 (citing *Tindell v. Barnhart*, 444 F.3d 1002, 1004 (8th Cir. 2006).)   The Magistrate Judge concluded, "Given that [Walker's opinion] touches on the very subject that this Court has determined should be remanded for further development and [because] there is no specific reference to any of Walker's testimony, this Court is hard pressed to conclude that Walker's testimony was appropriately considered by the ALJ."   (*Id.* at 54-55.)

No party objected to the R&R.   (*See* Docket Nos. 22, 23.)   This Court then adopted the R&R in an order dated September 5, 2012.  (Docket No. 24.)  That same day, Barber filed a motion for attorneys' fees pursuant to the EAJA.  (Docket No. 25.)

## ANALYSIS

### I.   STANDARD OF REVIEW

The EAJA provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).   A fee award under the EAJA is thus not available unless the Commissioner lacked substantial justification for her position.   *Id.*; *Lauer v. Barnhart*, 321 F.3d 762, 764 (8th Cir. 2003).

The term "substantially justified" means that the Commissioner's position need be "justified to a degree that could satisfy a reasonable person."   *Welter v. Sullivan*, 941 F.2d

674, 676 (8th Cir. 1991) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  The Commissioner possesses the burden to show that her position was substantially justified. *Lauer*, 321 F.3d at 764.  "[A] loss on the merits by the Commissioner does not give rise to a presumption that she lacked substantial justification for her position."  *Goad v. Barnhart*, 398 F.3d 1021, 1025 (8th Cir. 2005).   "The standard is whether the [Commissioner]'s position is 'clearly reasonable, well founded in law and fact, solid though not necessarily correct.'"  *Lauer*, 321 F.3d at 764 (emphasis omitted) (quoting *Friends of Boundary Waters Wilderness v. Thomas*, 53 F.3d 881, 885 (8th Cir. 1995)). When determining whether a position is substantially justified, the Court should consider the case "as an inclusive whole."  *See Comm'r, INS v. Jean*, 496 U.S. 154, 161-62 (1990) ("While the parties' postures on individual matters may be more or less justified, the EAJA – like other fee-shifting statutes – favors treating a case as an inclusive whole, rather than as atomized line-items.").

## II.   PREVAILING PARTY

The Court must first determine if Barber is the "prevailing party."[4]  *See* 28 U.S.C. § 2412(d)(1)(A).  The Court's order filed on September 5, 2012, reversed the Commissioner's decision and remanded Barber's application for further administrative proceedings.  Barber is therefore a prevailing party within the meaning of the EAJA.  *See Shalala v. Schaefer*, 509 U.S. 292, 302-03 (1993).

---

[4] The Commissioner does not seem to dispute that Barber is the prevailing party.

## III.    SUBSTANTIAL JUSTIFICATION

The Court must next determine if the Commissioner had substantial justification for her position.  The Court finds that the Commissioner's position was substantially justified to a degree that could satisfy a reasonable person.  *See Welter*, 941 F.2d at 676.

As a preliminary matter, much of the Commissioner's position was clearly justified because many of her arguments were adopted by this Court.  However, even by focusing exclusively on the arguments upon which Barber prevailed, the Court finds that the Commissioner's position was substantially justified, even though not correct.  *See Lauer*, 321 F.3d at 764.

The Commissioner argued that Barber did not meet or equal Listing 12.04 and that remand was therefore inappropriate.  Implicit in this argument was a contention that Barber did not meet the requirements of Listing 12.04(C)(3), meaning he did not have the continued need for a highly supportive living arrangement.[5]  The Court finds that this argument is supported by at least some record evidence, including the fact that Barber's depression had been described as "mild" and his mood as "stable" and that Barber had reported that medication helped with his depression.  Certain of Barber's activities, such as his social and recreational activities, also demonstrated that he might not meet the requirements of Listing 12.04(C)(3).  Indeed, this Court upheld other aspects of the Commissioner's Listing 12.04 analysis and noted that further development of the record was needed to determine if Barber met Listing 12.04(C)(3).  Accordingly, the Court finds

---

[5] As noted above, the ALJ determined that Barber's mental impairments resulted in more than minimal limitations on his ability to perform basic work-related activities.

that the Commissioner's position regarding Listing 12.04 was substantially justified. Similarly, the Commissioner's arguments regarding Walker's testimony, although incorrect, were reasonably supported by case law suggesting that an ALJ need not cite all evidence that he or she considered. *See, e.g.*, *England*, 490 F.3d at 1022.

The Court will not pass judgment on the proper outcome of this case on remand and whether, in fact, Barber meets the requirements of Listing 12.04(C)(3). However, the Court finds that the Commissioner's position was justified to a degree that could satisfy a reasonable person and therefore that an award of fees to Barber is not warranted.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Attorney Fees [Docket No. 25] is **DENIED**.

DATED:  May 29, 2013
at Minneapolis, Minnesota.

s/ John R. Tunheim
JOHN R. TUNHEIM
United States District Judge